THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RUBEN FRIAS, Defendant-Appellant.
First District (5th Division)   No. 81—1946

Opinion filed October 15, 1982.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond F. Bogan, and Barbara A. Levin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant was acquitted of murder but found guilty of armed violence based on the felony of murder and was sentenced to 15 years imprisonment. On appeal, he contends that (1) his conviction for armed violence cannot stand where he was acquitted of the predicate felony of murder; (2) the prosecutor's improper and prejudicial arguments and trial behavior violated his right to a fair trial; (3) he was not proved guilty beyond a reasonable doubt; (4) the denial of his pretrial motion to suppress the identification testimony of several witnesses was error; and (5) his cross-examination of one of the State's witnesses was improperly restricted.

Defendant moved to suppress the identification testimony of Edwin Padua, Noel Castro, James Malugin and Jose Morales, and at the hearing on the motion Noel Castro testified that all four of them were seated together in the back of a police squad car on November 12, 1979, when they were shown an array of 20 photographs depicting multiple shots of six or seven different people; that the four potential witnesses passed the pictures among themselves and discussed them; that he heard two individuals discussing one of the men portrayed but did not know who they were talking about; that he identified one of the pictures as that of the man he saw shoot Alfredo Torres on November 8; and that later that same day he was taken to the police station to view a lineup and again identified the man he saw on November 8. Castro admitted that the police did not tell him who to pick out at the photodisplay or at the lineup.

Investigator Wieclawek testified that he picked up Padua, Castro, Malugin and Morales on the morning of November 12, 1979, for the purpose of showing them photographs; that each individual was shown the group of photographs separately and independently identified defendant as one of the men involved in the November 8 shooting; that neither he nor his partner told any of the individuals who to

pick out; and that later these same persons separately viewed a lineup and again identified defendant. He later admitted that Castro viewed the photographs in the presence of the other three individuals, but that the others did not say anything while Castro viewed the pictures and identified defendant; and that he (Wieclawek) knew that defendant was in custody at the time the photograph display took place. The court found that "any possible suggestiveness or impropriety in the photographic identification procedures could not have resulted in irreparable misidentification" and denied defendant's motion.

At trial, Hilea Torres testified that on the evening of November 8, 1979, her son Alfredo Torres left their home to move his car which was parked on the street; that after he left, she heard shots and ran outside where she saw Alfredo lying wounded in the street; and that he subsequently died in a hospital.

Jose Morales testified that he was visiting friends at the Kents street gang hangout two houses from the Torres home on the night of the shooting; that he saw Torres emerge from his house and walk around the front of his car; that although it was dark, the street was illuminated and he was able to see two men run up to Torres and begin shooting; that when the shooting started, he (Morales) crouched behind a car but was able to see what happened through the car's windshield; that the first man, whom he could not identify, shot Torres several times and then fled; that the second man began shooting after the first one left, then turned toward him (Morales), so that he was able to see the man's face; that he was shown pictures the day after the shooting and identified the man he had seen; that he was taken to a lineup two days later and again made an identification; and that defendant was the man he saw at the scene and subsequently identified. Morales further testified that he was four houses away from where the shooting occurred; that the entire incident took less than a minute, during which time he was only able to see defendant's profile for 3 to 4 seconds; and that he could not describe defendant's individual features.

James Malugin testified that on November 8, 1979, he was on the street near the Kents gang clubhouse; that the street was illuminated by new, orange street lights; that he saw Alfredo Torres get out of his car and begin to walk around it; that at that moment, two men emerged from a gangway across the street and ran toward Torres, shooting at him; that he (Malugin) crouched down when the shooting started but was still able to observe what happened; that defendant was one of the men who shot Torres; that he had seen defendant on several occasions before the shooting and knew him to be a member

of the Disciples street gang, rivals of the Kents, to which he (Malugin) belonged; and that he had also identified defendant from a photo display and in a lineup. Malugin further testified that he was four or five houses away when the shooting occurred; and that the two men did not shoot at the same time, but one after the other.

Officer Gonzalez testified for the defense that upon arriving at the scene, he picked up a Mr. Ramero and drove him to a nearby tavern where he (Gonzalez) took Sammy Lopez and Adam Lazano into custody in connection with the Torres shooting. Gonzalez admitted that he did not know whether charges were ever approved against Lopez and Lazano.

Assistant State's Attorney James Linn testified in rebuttal that no murder charges were ever brought against Lopez and Lazano because there was insufficient evidence to connect them with the homicide.

Opinion

We first consider defendant's contention that his conviction for armed violence cannot stand where he was acquitted of the predicate felony of murder. Defendant argues that since he was acquitted of one of the elements of armed violence, the predicate felony, the State has not met its burden of proving all elements of the offense beyond a reasonable doubt. Therefore, he reasons, his armed violence conviction must be reversed.

The State, in its brief and argument here, treats this issue as a question of inconsistent verdicts and argues that Illinois law requires neither logical nor legal consistency in jury verdicts. In particular, the State relies on our decision in *People v. Johnson* (1980), 87 Ill. App. 3d 306, 409 N.E.2d 48, where defendant contended that his aggravated battery conviction could not stand because it was legally inconsistent with his acquittal for armed violence. We found that the verdicts were not legally inconsistent, and we went on to note that, even assuming legal inconsistency, Illinois did not require consistency, either legal or logical, in jury verdicts.

We believe, however, that *Johnson* is distinguishable because in the case before us defendant was acquitted of murder which, being the predicate felony, was an essential element required to be proved by the State in order to sustain a conviction. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2; *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.) Neither party has cited, nor has our own research discovered, any Illinois case in which a jury has returned a verdict of guilty of armed violence while at the same time acquitting the defend-

ant of the underlying felony. However, this issue has arisen in another jurisdiction.

In *Redondo v. State* (Fla. 1980), 403 So. 2d 954, a defendant was charged with aggravated battery and the unlawful possession of a firearm while engaged in the commission of a felony. A jury found that defendant guilty of the firearm offense, but effectively acquitted him of the aggravated battery charge by returning a verdict of guilty on the lesser included offense of simple battery, a misdemeanor. The trial court's arrest of judgment of conviction on the possession of a firearm had been reversed by the appellate court on the ground that juries may return inconsistent verdicts in criminal cases. (*Redondo v. State* (Fla. App. 1980), 380 So. 2d 1107.) The supreme court reversed, stating:

> "The existence of a felony or an attempted felony is an essential element of the crime of unlawful possession of a firearm during the commission of a felony. [Citation.] Therefore, petitioner may not be convicted of that crime. A conviction for unlawful possession of a firearm during the commission of a felony must stand or fall in conjunction with the underlying felony." 403 So. 2d 954, 956.

We find the reasoning of the Florida Supreme Court persuasive, particularly in the light of our recent decision in *In re Sanders* (1980), 81 Ill. App. 3d 843, 401 N.E.2d 1118. In that case, a petition for adjudication of wardship was filed against a juvenile offender, charging him with attempted armed robbery, murder, and felony murder predicated on attempted armed robbery. The trial court entered a finding of delinquency on the felony murder charge, but found for the juvenile on the murder and attempted armed robbery charges. This court reversed because, in view of the findings for the juvenile, the finding against him on felony murder could not "as a matter of law *** have been based upon proof beyond a reasonable doubt." 81 Ill. App. 3d 843, 849, 401 N.E.2d 1118, 1122.

While the holding in *Sanders* centered on the legal inconsistency of the trial court's ruling, we also noted that its findings were not justified for the further reason, quoting with approval the dissenting opinion in *People v. Dawson* (1974), 19 Ill. App. 3d 150, 160, 310 N.E.2d 800, 807, *rev'd* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, that:

> " 'If the jury in this case had found the defendant not guilty of armed robbery and guilty on the felony murder count, a conviction on that count could not stand for the very simple reason that a felony murder conviction cannot be sustained if no felony was committed.' " *In re Sanders* (1980), 81 Ill. App. 3d 843,

850, 401 N.E.2d 1118, 1123.

As *Redondo* and our own analysis in *Sanders* indicate, the problem is more than one of inconsistency, for in both cases State law did not require either logical or legal consistency in jury verdicts. Rather, each case focused on the relationship between the crimes charged and reasoned that where the crime for which the defendant was acquitted was one of the essential elements of the crime for which he was convicted, reversal was mandated because the acquittal raised a reasonable doubt as to defendant's guilt. Further support for this view appears in *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, where the court stated that the armed violence statute cannot be violated without first committing a felony, for "the legislature intended only to increase or enhance the minimum penalty upon conviction of a felony when the violator was in possession of a dangerous weapon while committing the felony." 91 Ill. 2d 164, 168, 435 N.E.2d 477, 478.

In the instant case, while the armed violence charge could have been based on another felony, such as aggravated battery, the predicate offense clearly specified in the armed violence instruction was murder, with no instruction given as to any other felony. The jury determined that defendant had not committed the offense of murder, and since a conviction for armed violence cannot be sustained if defendant did not commit the underlying felony, defendant's acquittal of murder requires reversal of his conviction for armed violence predicated on murder.

Moreover, defendant's acquittal also precludes a new trial. The Illinois Constitution bars retrial of the murder count. (Ill. Const. 1970, art. VI, sec. 6 (there can be no appeal from a judgment of acquittal in a criminal case following a jury trial on the merits).) In addition, a retrial on the armed violence charge would again raise the factual issue of defendant's guilt on the murder charge, and we have held that such a rehearing "violate[s] principles of collateral estoppel as embodied in the Fifth Amendment to the United State Constitution." *In re Sanders* (1980), 81 Ill. App. 3d 843, 850, 401 N.E.2d 1118, 1123.

Since we have disposed of this appeal on the first issue, we need not consider defendant's remaining contentions. For the reasons stated, defendant's conviction of armed violence based on the underlying felony of murder is reversed.

Reversed.

MEJDA and WILSON, JJ., concur.