(No. 57585.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RUBEN FRIAS, Appellee.

*Opinion filed December 16, 1983.*

194

Neil F. Hartigan and Tyrone C. Fahner, Attorneys General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Bruce A. Cardello, and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon, Assistant Public Defender, of counsel), for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Two armed men shot and killed Alfredo Torres on a street in Chicago on the evening of November 8, 1979, as he left his home to move his automobile which had been parked on the street. As a result of this killing, the defendant, Ruben Frias, was charged by information filed by the State's Attorney of Cook County with two counts of murder. One count was based on a violation of section 9—1(a)(1) of the Criminal Code of 1961, and the other count was based on section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(1), 9—1(a)(2)). Frias was also charged with one count of armed violence based on the felony of murder. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) He was tried separately from a co-offender, Fernando Fernandez.

The jury found Frias not guilty of murder; however, it found him guilty of armed violence based on having committed murder while armed. He was sentenced to 15 years' imprisonment. The appellate court reversed, holding that the armed-violence conviction was improper because the predicate felony, murder, was an essential element of the armed-violence charge, which was required to be proved by the State in order to sustain the conviction of armed violence. (109 Ill. App. 3d 888.) We granted the State's petition for leave to appeal.

This court has held that an essential element of a conviction for armed violence is the commission of an underlying felony while armed. In *People v. Haron* (1981), 85 Ill. 2d 261, 278, we said that "the requirement of section 33A—2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony."

Subsequently, in *People v. Tiller* (1982), 94 Ill. 2d 303, the defendant had been convicted of armed robbery and armed violence based on armed robbery. On appeal, we reversed the defendant's armed-robbery conviction. Having done that, we then reversed the defendant's armed-violence conviction because, without the armed-robbery conviction, "there is no underlying felony to sustain the conviction for armed violence." 94 Ill. 2d 303, 323.

The armed-violence statute (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) provides:

"Sec. 33A—2. Armed violence—Elements of the offense. A person *commits* armed violence when, while armed with a dangerous weapon, he *commits* any felony defined by Illinois Law." (Emphasis added.)

Clearly, as this court held in *Haron* and *Tiller*, the statute requires that, before one can be convicted of armed violence, he must have committed the predicate felony. Illinois Pattern Jury Instruction, Criminal, No. 11.20 (2d ed. 1981), defines the issue of armed violence. As given in the case now before us, the proposition that the jury was told the State must prove was "that the defendant committed the offense of murder."

Our decision in *Haron* and *Tiller* would appear to control the decision in this case. However, the State has raised questions on this appeal that have not heretofore been considered in connection with the armed-violence statute.

The State argues that in *People v. Myers* (1981), 85 Ill. 2d 281, this court approved a conviction of armed violence based on a felony which was not charged, that is, aggravated battery. In *Myers,* although the defendant was not convicted of aggravated battery, he was, nonetheless, charged with armed violence based upon the felony of aggravated battery. We have not held that the defendant must be *convicted* of the predicate felony. However, before he may be convicted of armed violence based upon the predicate felony, the elements of that felony must be established and it must be proved that the felony was commit-

ted while armed.

The State now contends that the appellate court erred when it held that the not guilty verdict as to the murder charge, which the State contends was legally inconsistent with the verdict of guilty of armed violence based on murder, required the reversal of the armed-violence conviction.

The appellate court opinion and the briefs filed by both the State and the defendant demonstrate that the term "inconsistent verdicts" does not carry a clear and precise meaning. This court, in *People v. Hairston* (1970), 46 Ill. 2d 348, 362, distinguished between logically and legally inconsistent verdicts and held that logically inconsistent verdicts can stand and implied that legally inconsistent verdicts cannot.

The State contends that the implication in *Hairston* concerning legally inconsistent verdicts is no longer valid. It is the State's position that this court, in *People v. Dawson* (1975), 60 Ill. 2d 278, effectively overruled *Hairston* as to the invalidity of legally inconsistent verdicts. Several decisions of the appellate court have viewed the holding in *Dawson* in this same light. (See *People v. O'Malley* (1982), 108 Ill. App. 3d 823; *People v. Harris* (1982), 104 Ill. App. 3d 833; *People v. Jimerson* (1979), 69 Ill. App. 3d 403.) In *People v. Johnson* (1980), 87 Ill. App. 3d 306, 309, although the appellate court stated it agreed with other decisions that held that *Dawson* impliedly overruled *Hairston* on the question of legally inconsistent verdicts, the court nonetheless found that, in the case it was considering, there was no legal inconsistency.

Part of the difficulty in resolving the question of whether or not inconsistent verdicts may stand stems from a lack of agreement as to what constitutes legal inconsistency. The appellate court, in the case now before us, while stating that Illinois no longer requires consistency, either legally or logically, in jury verdicts, nonetheless held that where the crime of which the defendant was acquitted was

an essential element of the crime for which he was convicted, the conviction cannot stand. 109 Ill. App. 3d 888, 893.

The State points out that the "essential element" test used by the appellate court falls squarely within the definition of "legal inconsistency," citing *People v. O'Malley* (1982), 108 Ill. App. 3d 823, 829, which states:

"A legally inconsistent verdict has been defined as follows:

'Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist.' *People v. Murray* (1975), 34 Ill. App. 3d 521, 531, 340 N.E.2d 186."

Further uncertainty is caused by the failure of cases, which are cited as holding that legally inconsistent verdicts can stand, to specify whether the holding is as to all inconsistent verdicts or only as to those that are logically inconsistent. In *Dunn v. United States* (1932), 284 U.S. 390, 76 L. Ed. 356, 52 S. Ct. 189, which is heavily relied upon in support of this proposition, the court simply stated, "Consistency in the verdict is not necessary." 284 U.S. 390, 393, 76 L. Ed. 356, 358, 52 S. Ct. 189, 190.

In *People v. Dawson* (1975), 60 Ill. 2d 278, this court did not distinguish between legal and logical inconsistencies. Although there is language in the opinion from which it may appear that the court was holding contrary to *Hairston,* the court finally stated: "The 'inconsistency' upon which the appellate court reversed the defendant's conviction of armed robbery was therefore nonexistent, and for that reason the judgment of the appellate court is reversed." (60 Ill. 2d 278, 282.) Thus the court found no inconsistency, logical or legal, in the verdicts in that case.

We hold that *Dawson* did not overrule *Hairston.* In support of the language of *Dawson* that seems contrary to

*Hairston,* the *Dawson* court quotes at length from *United States v. Carbone* (2d Cir. 1967), 378 F.2d 420, following which the opinion cites after a "see also" signal, *Dunn v. United States* and *People v. Hairston.* Thus *Dawson* cites *Hairston* in support of the language which it is now contended overrules that part of *Hairston* which implies that legally inconsistent verdicts cannot stand. It is thus apparent that it was not the intention of this court to overrule *Hairston* insofar as the holding of that case related to legally inconsistent verdicts.

It is appropriate to point out that we are here dealing with verdicts which we deem to be legally inconsistent. We do not find the appellate court's distinction between legally inconsistent verdicts and a verdict which acquits the defendant of an essential element of an offense of which he is convicted by another verdict to be necessary.

In *Hairston,* the court considered the effect on the facts of that case of the then-recent holding of the United States Supreme Court in *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189. The court noted that the rationale of *Ashe* is that " 'collateral estoppel' is embodied in the fifth amendment guarantee against double jeopardy" and that collateral estoppel, as defined in *Ashe,* means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in a future lawsuit. (*People v. Hairston* (1970), 46 Ill. 2d 348, 359-60.) However, the court in *Hairston* stated:

> "We see in *Ashe* \*\*\* no manifestation or command that collateral *estoppel* is to be applied where separate offenses arising from the same act or transaction are tried in a single prosecution." (46 Ill. 2d 348, 360.)

*United States v. Benfield* (8th Cir. 1979), 593 F.2d 815, and *Arnold v. Wyrick* (8th Cir. 1981), 646 F.2d 1225, also held that the criminal rule of collateral estoppel found in *Ashe v. Swenson* does not apply to verdicts of guilty and innocent rendered in a single trial.

In *Powers v. State* (1979), 285 Md. 269, 401 A.2d 1031, *cert. denied* (1979), 444 U.S. 937, 62 L. Ed. 2d 197, 100 S. Ct. 288, the Court of Appeals of Maryland traces the history in the Federal courts of the effect of inconsistent verdicts. The Maryland court noted that in *Dunn v. United States*, the Supreme Court held that, under the facts of that case, inconsistent verdicts rendered on a multicount indictment tried in a single trial could stand. The Maryland court pointed out, however, that in *Sealfon v. United States* (1948), 332 U.S. 575, 92 L. Ed. 180, 68 S. Ct. 237, the Supreme Court held that *res judicata* applied and that inconsistent verdicts rendered in separate trials could not stand. In that case the defendant had been separately indicted for conspiracy to defraud the United States and for the commission of the substantive offense. While noting that conspiracy and the substantive offense were separate and distinct crimes, the court held that in that case the jury verdict of not guilty in the conspiracy trial was a determination favorable to the defendant of facts essential to the conviction of the substantive offense.

The Maryland court in *Powers* next noted the admonition of *Ashe v. Swenson* that before collateral estoppel can be held to bar a subsequent prosecution the court must examine the record of the entire proceeding and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. See *Ashe v. Swenson* (1970), 397 U.S. 436, 444, 25 L. Ed. 2d 469, 475-76, 90 S. Ct. 1189, 1194.

*Turner v. Arkansas* (1972), 407 U.S. 366, 32 L. Ed. 2d 798, 92 S. Ct. 2096, was another case considered by the Maryland court in *Powers*. In *Turner* the defendant had been indicted for murder while perpetrating the crime of robbery on Larry Yates. The jury returned a general verdict of not guilty. Defendant was then indicted for the robbery of Yates. The parties had stipulated that the robbery

and the murder arose out of the same set of facts. The court stated that, under the law of Arkansas, murder and robbery could not be joined in one indictment and no offense could be tried jointly with murder. The Supreme Court held that the case was squarely controlled by *Ashe v. Swenson* and collateral estoppel prohibited the defendant's trial for robbery.

The Maryland court in *Powers* next pointed out that the Supreme Court cases involving collateral estoppel which it had discussed involved single-count indictments in which the jury initially acquitted the defendant and the defendant was subsequently tried for a related offense having a common issue of ultimate fact essential to the conviction. Those cases did not involve multicount indictments with the inconsistent verdicts being rendered in a single trial. The *Powers* court recognized that there is a division of authority in cases where a defendant is tried in a single trial on a multicount indictment and the jury renders legally inconsistent verdicts. Some cases have applied collateral estoppel in such instances, while others have not. A thorough discussion of those cases in *Powers* renders it unnecessary to repeat the discussion here. See *Powers v. State* (1979), 285 Md. 269, 284-85, 401 A.2d 1031, 1039-40.

In *Powers* the jury had returned two not-guilty verdicts on an armed-robbery count and an attempted-armed-robbery count, but the jury was unable to agree on a verdict on another armed-robbery count. The trial judge declared a mistrial on the latter count. The *Powers* court held that, although the verdicts were rendered in a single trial, collateral estoppel should apply. To hold otherwise, the court stated, would totally ignore the fact that on a related count there had been a valid and final judgment of acquittal which determined common issues of ultimate fact essential to the conviction. (*Powers v. State* (1979), 285 Md. 269, 288, 401 A.2d 1031, 1042.) The court noted that if the defendant were to be retried on the count on which no ver-

dict had been returned, and if the jury in the second trial were to convict, inconsistent verdicts in successive trials would result. Under the collateral-estoppel principles such a result would be impermissible. In support of this conclusion, the *Powers* court cited *Sealfon v. United States.* (285 Md. 269, 288, 401 A.2d 1031, 1042.) *Powers v. State* is a thoroughly researched, well written opinion, and we find the discussion and rationale contained in that opinion helpful.

We likewise hold that collateral estoppel must be applied in the case now before us. If, for some reason, the defendant in our case would have been or could have been separately indicted and separately tried for the offenses of murder and armed violence based on murder (see Ill. Rev. Stat. 1979, ch. 38, par. 111—4), and if the defendant would have been acquitted of the predicate offense of murder, under well-established collateral-estoppel principles, as stated in *Sealfon,* a subsequent prosecution for armed violence based on murder would be prohibited. If we fail to apply collateral estoppel simply because the legally inconsistent verdicts were rendered in the same trial, as the *Powers* court stated, we would have to ignore the fact that, in a related count in the same trial, there has been a valid final judgment of acquittal which determined common issues essential to the conviction in both counts.

The Supreme Court, in *Ashe v. Swenson,* admonished that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality. (*Ashe v. Swenson* (1970), 397 U.S. 436, 444, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194.) Realism and rationality require that collateral estoppel apply to this case even though the legally inconsistent verdicts were rendered in a single trial.

In applying collateral estoppel in such cases, the further admonition of *Ashe v. Swenson* noted above must be fol-

lowed. The court must examine the record of the entire proceeding and determine whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. See *Ashe v. Swenson* (1970), 397 U.S. 436, 444, 25 L. Ed. 2d 469, 475-76, 92 S. Ct. 1189, 1194.

Adding strength to our conclusion is the fact that several trial errors were raised in the appellate court that were not reached. These same errors have been raised in this court. If we were to hold that collateral estoppel does not apply because both verdicts were rendered by a single jury in a single trial, but if we were required to reverse and remand for a new trial on the armed-violence count because of some of the alleged trial errors, a guilty verdict in the second trial of armed violence could not be upheld under *Sealfon v. United States.*

Summarizing, in this case collateral estoppel would prevent conviction of armed violence if the two counts had been tried separately. It will also prevent conviction of armed violence if the cause is remanded for a new trial on that count alone. Therefore logic would seem to require that collateral estoppel should also apply when the two counts are tried together in a single trial.

In *People v. Hairston* (1970), 46 Ill. 2d 348, 361, this court, while recognizing that legally inconsistent verdicts could not stand, held that where inconsistent verdicts of guilty are returned, a reversal and new trial on all counts must follow. In *People v. Pearson* (1973), 16 Ill. App. 3d 543, the appellate court had before it inconsistent findings of *guilty* and *not guilty.* In *Pearson* the defendant had been charged with two counts of aggravated assault and two counts of armed violence. All four counts arose out of the alleged firing of a handgun at two police officers. The defendant was found guilty of each count of aggravated assault and not guilty of each count of armed violence. The court noted the remedy suggested in *Hairston* but also

noted that that suggested remedy applies only where there were inconsistent verdicts of *guilty*. The appellate court pointed out the provisions of the Illinois 1970 Constitution prohibiting appeals from judgments of acquittal (Ill. Const. 1970, art. VI, sec. 6) and held that the acquittal judgments stood as valid final judgments. Then, applying collateral estoppel, the appellate court held that a new trial on the charges of aggravated assault alone was barred and required the reversal of the convictions on those charges. *People v. Pearson* (1973), 16 Ill. App. 3d 543, 549.

We conclude that a similar result must be reached here. Under our constitution there can be no appeal of the acquittal of the charge of murder. That acquittal stands as a valid, final determination of that issue. Since we do not have legally inconsistent *guilty* verdicts, we cannot follow the suggestion of *Hairston* that a reversal and a new trial on all counts is the proper remedy. Also, as in *Pearson*, collateral estoppel prevents the retrial of the armed-violence count alone. To retry the defendant on that charge would unconstitutionally cause the defendant to relitigate an essential element of that crime (murder) of which he had previously been acquitted. The appropriate remedy is therefore reversal of the armed-violence conviction.

For the reasons herein stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*