THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MILDRED SIMS, Defendant-Appellant.

First District (2nd Division)    No. 82—1415

Opinion filed June 12, 1984.—Rehearing denied June 19, 1984.

James J. Doherty, Public Defender, of Chicago (Jeffrey M. Howard and Frank P. Madea, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Robert W. Bertucci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant was charged by information with voluntary manslaughter, by stabbing Walter Sims (deceased) with a knife, without lawful justification, in the unreasonable belief that the circumstances were such that, had they existed, would justify such killing and with armed violence in that, while armed with a knife with a blade over three inches, she committed the felony of voluntary manslaughter. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—2(b), 33A—2.) Following a bench trial, defendant was found guilty of voluntary manslaughter and not guilty of armed violence and sentenced to three years in the penitentiary. Defendant appeals, contending that the finding of not guilty of armed violence based on voluntary manslaughter is inconsistent with the finding of guilty of voluntary manslaughter since each offense had the same essential elements and, consequently, that the conviction for voluntary manslaughter should be reversed.

The evidence at trial showed that deceased, age 42, and defendant, age 30, were married. Deceased had injured his hip some years prior to this incident and could not walk without a cane. On June 7, 1981, defendant returned home from work. Deceased was not home, but was at his mother's apartment across the street. According to deceased's mother, defendant hit deceased with her hands or fists several times and accused deceased of having somebody "in my house." After deceased's mother told them they could not fight there and to get out, defendant said to deceased, "You c'mon, I'm going to fix you." The couple left and returned to their apartment, where deceased was killed by defendant, who stabbed him in the neck with a steak knife.

Defendant gave several statements to authorities. First, she orally

told a police officer that she killed deceased but did not mean it. She explained that she had come home from work at approximately 1 a.m. and found the house messed up. She then became upset and found deceased at his mother's house where some words were exchanged. She slapped deceased and went back across the street followed by deceased who remained in the apartment doorway waving his cane. She then went into the kitchen, got a steak knife, and went back and killed him. During a second conversation, when an assistant State's Attorney was present, defendant said deceased hit her with the cane. Defendant also gave a written statement which was transcribed and received into evidence.

Defendant testified that she came home from work at approximately 1 a.m. and found her apartment messed up. Deceased answered the door at her mother-in-law's house, and when she asked him why the apartment was messed up, he called her a name and she slapped him. She also noticed that his speech was slurred, and he smelled of alcohol. She denied telling deceased she was going to "fix him," but claimed deceased said he was going to "fix her." Later, inside their own apartment the argument resumed. Deceased called her names and hit her with the cane. Because she thought deceased was going to kill her and she knew that in 1976 deceased had been convicted of aggravated battery arising from a shooting, she went to the kitchen and grabbed a steak knife. As he moved toward her, deceased raised the cane and said, "I'm going to put you on ice," swung the cane, but missed, then swung again. She then stabbed at deceased's neck with the steak knife. Deceased stepped backwards, and she ran out of the apartment.

In closing argument, defendant argued that she should not be found guilty of armed violence because "it is almost inevitable that some sort of weapon" will be used in a voluntary manslaughter. Defendant also argued that where a person has an honest, although unreasonable, belief that he has a right to protect himself, but is also found guilty of armed violence, one must be sentenced to a period of six years or more, which is "totally out of line" and "not what the legislature intended." Defendant also argued that the weapon used was not something defendant carried on her person before the incident, and, consequently, she should not be found guilty of armed violence.

In rebuttal to this argument, the State pointed out there are ways to kill somebody without a deadly weapon, such as strangling, but that "when it is defined under the armed violence, you are guilty of armed violence," and it made no difference that defendant had not

previously carried the knife around. The prosecutor also stated:

"Now, as to the question of voluntary manslaughter and armed violence, Counsel is saying don't find it because six years is unreasonable, if this was a jury trial, you couldn't make the argument. The jury would be instructed otherwise. We are obligated to look at the facts and not say that we feel sorry because they might go to a penitentiary for a statutory period of time."

Following a recess, the court made its findings in the following colloquy:

"THE COURT: ***

Based upon the evidence that has been offered in the case, the Court does find from the evidence that the defendant is guilty of voluntary manslaughter. That will be the finding of the Court.

[Assistant Public Defender]: May I approach the Bench?

[Assistant State's Attorney]: As to the second count?

THE COURT: Voluntary manslaughter is the only count that I am finding her guilty of. The armed violence count, I would say that in accordance with the law, not guilty."

Defendant filed a written motion for a new trial, but did not specifically raise the issue of inconsistency between the two findings. Defendant did argue that the evidence was not sufficient to prove her guilty of voluntary manslaughter beyond a reasonable doubt and argued this point orally to the court at a hearing on the motion. The court denied the motion, finding that the evidence was sufficient, and, during sentencing, commented on the evidence in detail.

Citing *People v. Murray* (1975), 34 Ill. App. 3d 521, 340 N.E.2d 186, and *In re Sanders* (1980), 81 Ill. App. 3d 843, 401 N.E.2d 1118, defendant argues that the verdicts of guilty of crime A (that is voluntary manslaughter) but not guilty of crime B (armed violence based on voluntary manslaughter) where both crimes arise out of the same set of facts, are legally inconsistent since the same essential elements of each crime were found to both exist and not to exist. Defendant particularly relies on *People v. Pearson* (1973), 16 Ill. App. 3d 543, 306 N.E.2d 539, where defendant was charged with two counts of aggravated assault and two counts of armed violence, based on his alleged actions in firing one shot at two police officers. After a bench trial, defendant was found guilty of both aggravated assault counts, but not guilty of both armed violence counts. On appeal, this court construed the finding of not guilty of armed violence as inconsistent with the finding of guilty of aggravated assault, and reversed the conviction

based upon the finding of guilty of aggravated assault.

The State contends the trial court determined defendant knowingly and intentionally stabbed and killed her husband with a knife without lawful justification, in the unreasonable belief that the circumstances were such that, had they existed, would justify such killing. The State concedes that "[t]hese same elements constitute the offense of armed violence—the commission of voluntary manslaughter while armed with a dangerous weapon," but argues that the Illinois Supreme Court in *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, has found the armed violence statute was not intended by the legislature to apply to the felony of voluntary manslaughter. The findings are not inconsistent, the State says, since the court's ruling was based on its determination that defendant could not legally be convicted of armed violence, exactly as the supreme court subsequently held in *Alejos*.

Where findings inconsistently acquit and convict of separate crimes arising from the same act, Illinois follows the rule that logical consistency is not necessary, so long as the findings are not legally inconsistent as, for example, where acquittal and conviction occur upon charges of crimes composed of different elements, but arising out of the same state of facts. (*People v. Hairston* (1970), 46 Ill. 2d 348, 361-62, 263 N.E.2d 840.) This rule was recently restated in *People v. Frias* (1983), 99 Ill. 2d 193, 198-99, 457 N.E.2d 1233. Defendant points out that in *Frias* the supreme court cited *People v. Pearson* (1973), 16 Ill. App. 3d 543, 549, with approval for the proposition that where findings of guilty and not guilty are inconsistent, a new trial on the remaining charge is barred by principles of collateral estoppel and the remaining conviction must be reversed. (*People v. Frias* (1983) 99 Ill. 2d 193, 203-04.) However, there must first be an "inconsistency," for if there is no inconsistency, logical or legal, as in *People v. Dawson* (1975), 60 Ill. 2d 278, 282, 326 N.E.2d 755, no reversal is required, since the apparent inconsistency may be explained. (*People v. Frias* (1983), 99 Ill. 2d 193, 198.) In *Dawson*, for example, the court found the apparent inconsistency was explainable because of the way the jury was instructed.

In *People v. Frias* (1983), 99 Ill. 2d 193, our supreme court, following *Powers v. State* (1979), 285 Md. 269, 401 A.2d 1031, also said that before collateral estoppel could be held to bar a subsequent prosecution, the court must examine the record of the entire proceeding and conclude whether a rational trier of fact could have grounded its verdict or finding upon an issue other than that which defendant seeks to foreclose from consideration. (*People v. Frias* (1983), 99 Ill.

2d 193, 200.) The *Frias* court also cited *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, for the principle that collateral estoppel in criminal cases is "not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality." *People v. Frias* (1983), 99 Ill. 2d 193, 202, citing *Ashe v. Swenson* (1970), 397 U.S. 436, 444, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194.

In this case, we conclude that the record does explain the apparent contradiction between the findings of guilty and not guilty , either as an attempt by the trial court to exercise lenience toward defendant, or as an application of the rationale subsequently adopted by the Illinois Supreme Court in *People v. Alejos* (1983), 97 Ill. 2d 502, that the legislature did not intend to include voluntary manslaughter as a possible predicate offense for a finding or conviction of armed violence in circumstances such as these.

In *People v. Murray* (1975), 34 Ill. App. 3d 521, 532, 340 N.E.2d 186, where it was contended that jury acquittals of aggravated battery were inconsistent with murder convictions, the court found the acquittals may have been because the jury thought the murder conviction was sufficient punishment. The court stated that in cases involving legally inconsistent verdicts or findings, the reason why the conviction must be reversed, with or without a remand for a new trial, is that, in such cases, the conviction as a matter of law cannot be deemed to have been based upon proof beyond a reasonable doubt. The *Murray* court pointed to *People v. Pearson* (1973), 16 Ill. App. 3d 543, as a case in which the findings were necessarily contradictory as to the same essential elements and, therefore, legally inconsistent. The *Murray* court, citing *People v. Dawson* (1975), 60 Ill. 2d 278, said the jury may have acquitted Dawson of felony murder because the jury believed that its conviction of Dawson for the armed robbery provided sufficient punishment and that the jury's historic power of lenity must prevail over "the traditional doctrine concerning legally and logically inconsistent verdicts." *People v. Murray* (1975), 34 Ill. App. 3d 521, 536; see also *People v. Buford* (1982), 110 Ill. App. 3d 46, 55-56, 441 N.E.2d 1235.

In this case, an examination of the entire record, especially the closing arguments, convinces us that the trial court either accepted defendant's argument concerning lenity and therefore acquitted defendant of armed violence in order not to foreclose the possibility of probation (*People v. O'Malley* (1982), 108 Ill. App. 3d 823, 830-33, 439 N.E.2d 998), or accepted defendant's arguments that (as the supreme court subsequently decided in *People v. Alejos* (1983), 97 Ill. 2d 502),

voluntary manslaughter here is not an appropriate predicate for a finding of armed violence. Since both of these arguments find support in the record, and since the trial court explicitly rejected defendant's argument in the post-trial motion that the evidence was insufficient to prove guilt of voluntary manslaughter beyond a reasonable doubt, a finding which also is amply supported by the evidence, we find that under the circumstances here, there is no inconsistency between the court's findings. Rather, the apparent inconsistency is explained and the proof was sufficient. Since there was no inconsistency and the evidence was sufficient to prove guilt beyond a reasonable doubt, we find no reason to disturb the judgment. *People v. Frias* (1983), 99 Ill. 2d 193; *People v. Dawson* (1975), 60 Ill. 2d 278.

Therefore, the judgment of the circuit court of Cook County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

Affirmed.

HARTMAN, P.J., and DOWNING, J., concur.