THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VITO SPIEZIO, Defendant-Appellant.

First District (3rd Division)   No. 1—86—0862

Opinion filed December 6, 1989.

Randolph N. Stone, Public Defender, of Chicago (Alison Norwood, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Judy L.

Groeneveld, and Andrea K. Muchin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Vito Spiezio, was convicted of attempted murder and aggravated assault. Defendant was sentenced to concurrent terms of 12 years for attempted murder and 364 days for aggravated assault. On appeal, defendant argues that (1) his convictions for attempted murder and aggravated assault are legally inconsistent; (2) he was not proven guilty of attempted murder beyond a reasonable doubt; (3) the trial court erred in submitting Illinois Pattern Jury Instructions, Criminal, No. 6.06 (2d ed. 1981) (hereinafter IPI Criminal 2d) on the issue of the impossibility of committing the offense of attempted murder to the jury; (4) he was denied his right to a fair trial when the assistant State's Attorney told the jury that the State's police officer and State's Attorney witnesses were more credible due to their sworn oaths to State office; (5) the trial court erred in submitting the *Prim* instruction to the jury; and (6) the trial court erred in sentencing defendant based on a biased presentence report. We affirm.

Defendant was initially charged with armed robbery and home invasion. The attempted murder and aggravated assault charges arose out of defendant's arrest on the initial charges. Defendant was tried on all of the charges, and the jury found him not guilty of armed robbery and home invasion and guilty of attempted murder and aggravated assault. Since this appeal concerns only defendant's convictions for attempted murder and aggravated assault, we will only discuss the relevant portions of trial testimony.

On July 23, 1984, at approximately 1:45 a.m., off-duty Chicago police officers Thomas Coughlin, Alfred Thome, Thomas Pack and Gerald Murray went to the Captain's Quarters bar located at 3900 South Western Avenue. All four officers were assigned to the investigation of an armed robbery and home invasion which occurred two days earlier. The officers were aware of the victim's description of the offender and that there was an outstanding warrant for defendant's arrest for the offense.

At approximately 2 a.m., defendant and his girl friend entered the bar. Officer Coughlin observed defendant's girl friend look in his direction, speak to defendant and then walk with defendant towards the door. Officer Coughlin alerted his fellow officers, and they followed defendant out of the bar. Coughlin yelled to defendant and identified himself as a police officer. Defendant pulled a gun from his waistband,

pointed it at Coughlin's head and stated, "[F]uck you coppers." Coughlin testified that he was four to five feet away from defendant when he made the statement. Officer Thome was following directly behind Coughlin. Coughlin jumped on defendant, and they fell to the street and began to roll around and struggle for possession of the gun. Coughlin testified that defendant rolled on top of him, pointed the gun at him again and Officer Thome joined the struggle for the gun. Coughlin and Thome banged defendant's hand on the ground until he let go of the gun. Officer Pack retrieved the weapon, while defendant and Coughlin continued to struggle. Officer Pack retrieved the weapon, while defendant and Coughlin continued to struggle. Officer Pack retrieved handcuffs from his car, and the three officers handcuffed defendant. Officer Coughlin examined the gun and determined that it was in working order. The gun contained seven rounds of bullets in the clip and one in the chamber. Coughlin also testified that the gun's safety device was turned on. Coughlin's testimony was corroborated by Officers Thome and Pack. Officer Thome also testified that defendant pointed the gun at him as he struggled to help Coughlin remove the gun from his possession.

Defendant testified on his own behalf and denied that he had a gun in his possession, or that he pulled a gun on the police and yelled "[F]uck you coppers." Defendant further testified that as he held his girl friend's hand and opened the door to the bar with his other hand, someone called him from inside the bar. He stated that as he turned around, he was jerked from behind and hit in the face. Defendant testified that when he regained consciousness, he was lying facedown in the middle of 39th Street surrounded by police officers.

Assistant State's Attorney DeOca testified for the State in rebuttal and stated that following the incident, she gave defendant his *Miranda* warnings and questioned him about the events of that morning. She further testified that defendant told her that he tossed away his gun while lying on the ground outside of the bar.

During the jury instruction conference, the assistant State's Attorney submitted IPI Criminal 2d No. 6.06 on misapprehension of the circumstances. The court gave the instruction over defendant's objection. After a lunch break, the jury retired to deliberate. At 7:39 p.m. that evening, the jurors sent the judge a note which stated that they were unable to reach a unanimous decision. Defendant made a motion for a mistrial. The court denied the motion and gave the jury the *Prim* deadlock instruction. Also, during deliberations several jurors sent out notes asking how long they should stay and requesting that messages be sent to their families and friends. The court, with the

consent of defense counsel and the assistant State's Attorney, responded that the jurors should stay as long as they needed. After the jury returned its verdict, defendant made a motion for a mistrial on the basis that the court's failure to respond to the jurors' individual requests for calls to their families coerced the verdict. The court denied defendant's motion.

At the sentencing hearing, the court considered the presentence investigation report prepared by probation Officer Shapiro. Defense counsel made a motion to strike the entire social summary portion of the report. The court struck and allowed amendment of portions of the report, but denied defendant's motion to strike the entire social summary. The court sentenced defendant to concurrent terms of 12 years for the attempted murder of Officer Coughlin and 364 days for the aggravated assault of Officer Thome. This appeal followed.

Defendant first argues that his convictions for the attempted murder of Officer Coughlin and the aggravated assault of Officer Thome are legally inconsistent. It is his position that his conviction for attempted murder should be vacated and the cause remanded for a new trial. We disagree.

■ Multiple convictions and concurrent sentences for different offenses arising from multiple acts which are incidental to or motivated by the same criminal objective are permissible. (*People v. King* (1977), 66 Ill. 2d 551, 565, 363 N.E.2d 838, 844.) Further, where a claim of inconsistent guilty verdicts involves multiple acts or victims, the question is whether the trier of fact could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent. (*People v. Spears* (1986), 112 Ill. 2d 396, 405, 493 N.E.2d 1030, 1034.) A legally inconsistent verdict has been defined as follows:

> "Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist." *People v. Frias* (1983), 99 Ill. 2d 193, 198, 457 N.E.2d 1233, 1235.

In the present case, defendant was found guilty of the attempted murder of Officer Coughlin. The jury's verdict is supported by evidence that defendant pulled a fully loaded automatic weapon from his waistband, pointed it from a distance of four to five feet in the direction of Coughlin's head and yelled "[F]uck you coppers." Defendant was also found guilty of the aggravated assault of Officer Thome. The jury's verdict on that charge is supported by evidence that Thome

was following behind Coughlin when defendant initially pulled the gun and that defendant pointed the gun at Thome after he came to Coughlin's aid in the struggle to remove the gun from defendant's possession.

Defendant's convictions and concurrent sentence for attempted murder and aggravated assault are permissible because both crimes arose from multiple acts which were motivated by the same criminal objective to evade arrest. Further, the verdicts are not legally inconsistent because each crime involved separate acts and victims. The jury could rationally find that defendant intended to kill Officer Coughlin when he pointed the loaded gun at his head. It could also find that Officer Thome, who was walking immediately behind Coughlin, could reasonably believe that he was in danger of becoming the victim of a battery if defendant fired the gun. It was also reasonable for the jury to conclude that Thome was in reasonable apprehension of receiving a battery when defendant pointed the loaded gun at him as they struggled for possession of the weapon. Ill. Rev. Stat. 1985, ch. 38, par. 12—2(a)(2).

■ These verdicts are consistent because they are based on the jury's findings of distinctly different elements. Given the dissimilar elements of the two sets of charges, *i.e.*, the attempted murder and aggravated assault, the verdicts can reasonably be construed as a finding by the jury that the State proved beyond a reasonable doubt the attempted murder of Officer Coughlin, but not the attempted murder of Officer Thome, where there was evidence of separate acts, each capable of supporting a different offense. (*People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1025, 516 N.E.2d 382, 393.) Moreover, the verdicts may reflect the jury's belief that conviction of less than all of the charges would sufficiently punish defendant. (See *People v. Buford* (1982), 110 Ill. App. 3d 46, 56, 441 N.E.2d 1235, 1242.) We therefore conclude that defendant's convictions for the attempted murder of Officer Coughlin and the aggravated assault of Officer Thome are not legally inconsistent.

Defendant next argues that he was not proven guilty of attempted murder beyond a reasonable doubt. We disagree.

■ To sustain a conviction for attempted murder, it must be shown that the accused acted with the specific intent to kill. *People v. Anderson* (1982), 108 Ill. App. 3d 563, 566, 439 N.E.2d 65, 68.

In the present case, the evidence adduced at trial revealed that on the morning in question, Officer Coughlin called to defendant as he exited the Captain's Quarters bar and announced that he was a police officer. Defendant responded by pulling a loaded automatic weapon

from his waistband, pointing it at Officer Coughlin's head from a distance of four to five feet and yelling "[F]uck you coppers." Coughlin jumped on defendant. After a struggle, and with the assistance of Officer Thome, the gun was removed from defendant's possession. Defendant argues that this evidence did not prove that he attempted to kill Coughlin. Defendant posits that the only reasonable inference that could be drawn from the evidence is that his conduct recklessly created a possibility of death which is not sufficient to sustain a conviction for attempted murder. Defendant cites *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, in support of his proposition.

Defendant's reliance on *Trinkle* is misplaced. *Trinkle*, unlike the present case, involved a situation where both the indictment and the jury instructions provided that the defendant could be found guilty of attempted murder without proof of intent to kill. Here, the indictment and the court's instructions to the jury both indicated that intent to kill was a necessary element of the offense of attempted murder. Further, defendant does not assert and we do not find that either the attempted murder indictment or jury instructions in the present case were erroneous.

■ Therefore, defendant's argument must fail because the jury could only have found him guilty of attempted murder based on intent to kill since that was the only offense with which he was charged. Further, there was sufficient circumstantial evidence of intent to kill to support the jury's verdict where defendant pointed a loaded gun at the police officer from close range, while yelling "[F]uck you coppers." We therefore conclude that defendant was proven guilty of attempted murder beyond a reasonable doubt.

Defendant next argues that the trial court erred in submitting IPI Criminal 2d No. 6.06 on the issue of the impossibility of committing the offense of attempted murder. We disagree.

Section 8—4(b) of the Criminal Code of 1961 provides:

> "It shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the offense attempted." (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(b).)

Illinois Pattern Jury Instruction Criminal 2d No. 6.06 mirrors the statute and provides:

> "It is not a defense to the charge of attempt that, because of a misapprehension of the circumstances, it would have been impossible to commit the offense attempted."

The instruction is followed by a committee note which states: "Give this instruction only when there is evidence of impossibility." IPI

Criminal 2d No. 6.06, Committee Note, at 52.

The evidence adduced at trial indicated that the weapon which defendant pointed at the police officers was a loaded automatic with the safety device in the "on" position. Since defendant denied that he possessed the gun, there was no direct testimony on the issue of whether or not defendant knew that the safety device was activated. However, the assistant State's Attorney argued at the jury instruction conference that the instruction was appropriate because the safety probably precluded the gun from being fired. Defendant objected to submission of the instruction and argues on appeal that the intent question was improperly complicated by the instruction.

■ We find the court's submission of IPI Criminal 2d No. 6.06 to the jury to be appropriate under the circumstances. Since it is reasonable to conclude that the safety device could have prevented the gun from firing, it would appear from the evidence adduced at trial that although defendant's words and actions were circumstantial evidence of his intent to kill Officer Coughlin and assault Officer Thome with a dangerous weapon, he would probably have been unable to actually fire the weapon. However, since impossibility is not a defense to the crime of attempted murder, it was appropriate for the court to instruct the jury on the issue since the jury could properly consider that defendant believed he had the means to carry out his intended crime. (*People v. Hicks* (1987), 162 Ill. App. 3d 707, 714, 516 N.E.2d 807, 812.) We therefore conclude that the trial court did not err in submitting IPI Criminal 2d No. 6.06 to the jury.

Defendant next argues that he was denied his right to a fair trial when the assistant State's Attorney improperly told the jury in closing argument that the police officers and State's Attorneys were more credible witnesses due to their sworn oaths to State office. We disagree.

■ ■ It is well settled that great latitude is afforded a prosecutor during closing argument and the propriety of the prosecution's remarks is generally left to the discretion of the trial court, which determination shall be followed absent a showing of abuse of discretion. (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329, 339-40.) The prosecutor is entitled to comment on the evidence, draw inferences therefrom, and comment on the accused's credibility. (*People v. Carter* (1989), 177 Ill. App. 3d 593, 601, 532 N.E.2d 531, 536.) Further, improper prosecutorial arguments generally do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Shum* (1987), 117 Ill. 2d 317, 347, 512 N.E.2d 1183, 1193.) Although it is generally improper to vouch for the credibility of

a witness or to express a personal opinion on a case, remarks are to be viewed in context, and a defendant cannot complain of prosecutorial remarks which are provoked or invited by his counsel's arguments. *People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1023, 516 N.E.2d 382, 392; *People v. Emerson* (1987), 122 Ill. 2d 411, 434, 522 N.E.2d 1109, 1118.

In the present case, defendant argues that the prosecutor's rebuttal argument contained numerous improper comments which suggested that the jury should believe that the State's Attorneys and police officers who testified were more credible than defendant because of their sworn oaths of office. From our reading of the record, we find the prosecutor's argument to contain proper comments on the evidence. In addition, the prosecutor's comments on the credibility of the police officer and State's Attorney witnesses was in direct response to defense counsel's argument.

■ In closing, defense counsel implied that the assistant State's Attorney who testified at trial regarding defendant's post-arrest statement was not a competent lawyer because he did not take complete notes regarding the surrounding circumstances. Also, defense counsel stated that the police officers were lying about the events which occurred on the morning of defendant's arrest. Under these circumstances, we find the prosecutor's response that it was ridiculous to believe that the assistant State's Attorneys and police officers were lying and involved in an attempt to frame defendant was not improper given defendant's theory of the case and defense counsel's argument that the police officers were attempting to frame defendant because his brother was involved in a civil suit with another police officer. We therefore conclude that the prosecutor's comments did not prejudice defendant or deprive him of his right to a fair trial.

Defendant next argues that the trial court erred in submitting the *Prim* instruction to the jury. It is his position that the supplemental instruction coerced the jury's verdict. We disagree.

■ It is primarily the function of the trial court to determine, on the basis of such factors as the length of time already spent in deliberation and the complexity of the issues before the jury, when the giving of the supplemental *Prim* instruction is appropriate. (*People v. Cowan* (1985), 105 Ill. 2d 324, 328, 473 N.E.2d 1307, 1309; *People v. Prim* (1972), 53 Ill. 2d 62, 76, 289 N.E.2d 601, 609-10.) In reviewing the propriety of the trial court's supplemental instruction, the test is whether the language used actually interfered with or coerced the verdict to the prejudice of the defendant. *People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1045, 516 N.E.2d 1357, 1362.

Here, defendant does not contest the propriety of the *Prim* instruction. The instruction given in the present case precisely paralleled the instruction given in the *Prim* case. However, defendant argues that because the instruction was not necessary, the trial court abused its discretion when it tendered the instruction. In the present case, the jury heard two days of testimony. After a lunch break on the second day, the jury retired to deliberate. In response to a note from the jury inquiring how long they should deliberate, the court with the consent of defense counsel and the State's Attorney responded "as long as you need." Twice during deliberations, individual jurors gave the bailiff messages to transmit to their families and friends. At approximately 7:39 p.m. that evening, the jurors sent the judge a note which stated that they were unable to reach a unanimous decision. The court inquired into the numerical division of the jury and the number of votes taken to reach their decision. When the foreman responded that there had been some change in the vote, the court gave the jury the *Prim* supplemental instruction. At approximately 11:30 p.m., the jury returned verdicts of not guilty of home invasion and armed robbery and guilty of the attempted murder of Officer Coughlin and the aggravated assault of Officer Thome.

Defendant contends that when following lengthy deliberation and notes to family with response, the judge forced the jury to deliberate even though they were deadlocked, the jurors signed verdict forms of guilty just so that they could go home. Defendant's assertions are unsupported by the record. The trial court's *Prim* instruction was proper, and his language and questions to the jury were non-coercive in nature. Under these circumstances, we find no abuse of discretion in the trial court's decision to give the supplemental *Prim* instruction where the jury had been deliberating for over six hours and their numerical division indicated that they were close to reaching a verdict.

Finally, defendant argues that the trial court erred in sentencing him on the basis of a biased presentence report. We disagree.

At sentencing, the trial court should consider all available and pertinent information concerning the person and the crime to enable him to impose an appropriate sentence. (*People v. Crews* (1967), 38 Ill. 2d 331, 337, 231 N.E.2d 451, 454.) However, in considering a presentence report, the court must exercise care to insure the accuracy of information considered and to shield itself from the potentially prejudicial effect of improper materials. (*People v. Peacock* (1982), 109 Ill. App. 3d 684, 685-86, 440 N.E.2d 1260, 1262.) Where a trial court considers incompetent and prejudicial evidence in sentencing, it

abuses its discretion, and the sentence based on such evidence will be vacated. *People v. Laramore* (1987), 163 Ill. App. 3d 783, 793, 516 N.E.2d 401, 407; *People v. Kirk* (1978), 62 Ill. App. 3d 49, 54, 378 N.E.2d 795, 799.

██ Here, defendant objected to numerous entries and statements in the presentence report. The court reviewed each entry and amended or deleted the objectionable material from the presentence report. During the sentencing hearing, the court specifically stated that the trial testimony would speak for itself and that any information in the presentence report which the State could not support with witness testimony would be stricken from the report. The record clearly indicates that the trial court exercised great care to insure the accuracy of the information considered and to shield itself from the potentially prejudicial effect of any improper evidence. Any alleged error or defect in the report was cured by deletion and amendment. We therefore find that the trial court did not rely on incompetent or prejudicial information in sentencing defendant.

For all of the foregoing reasons the judgment and sentence of the circuit court is affirmed.

Affirmed.

WHITE and CERDA, JJ., concur.