(No. 78848.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALLEN KLINGENBERG, Appellee.

*Opinion filed April 18, 1996.—Rehearing denied June 3, 1996.*

MILLER, J., joined by FREEMAN, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Norbert J. Goetten, William L. Browers and Mary Beth Burns, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Robert J. Hauser, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Allen Klingenberg, was charged by indictment in the circuit court of Lake County with two counts of official misconduct (720 ILCS 5/33—3 (West 1992)) and one count of theft over $300 (720 ILCS 5/16—1(a)(2)(A) (West 1992)). Following trial, the jury returned verdicts finding the defendant guilty of one count of official misconduct and not guilty of the other two offenses. The trial court entered judgment on the verdicts and sentenced the defendant to 30 months' probation, 500 hours of public service, a $2,000 fine, and 90 days of periodic imprisonment. The appellate court reversed, finding that the verdict convicting the defendant of official misconduct was legally inconsistent with the verdict acquitting him of theft. We allowed the State's petition for leave to appeal. 145 Ill. 2d R. 315.

The record discloses the following pertinent facts. The board of education of J. Sterling Morton School District No. 201 (the board) hired the defendant to fill

the position of school district superintendent in April 1992. The contract between the defendant and the board provided that "[t]he Board shall pay reasonable relocation expenses incurred by the Superintendent within one year from the date of this Agreement. In no case shall such expenses exceed $10,000." In May 1992, after assuming his duties as superintendent, the defendant moved from Lake Forest to an apartment within the school district.

In June 1993, the defendant was charged in a three-count indictment with theft and official misconduct. Count I charged him with theft, by deception, of property having a total value in excess of $300. Count I alleged that the defendant committed theft by submitting fictitious vouchers for moving expenses to the board to obtain moving expense reimbursement to which he was not entitled. Counts II and III charged the defendant with official misconduct in that, while acting in his official capacity, he knowingly committed theft. Both official misconduct counts alleged that the defendant committed theft when he submitted fictitious invoices for moving expenses to the board and received reimbursement to which he was not entitled. Count II alleged that the defendant received moving expense reimbursement of $3,520 and count III alleged that the defendant received reimbursement in the amount of $1,015. The jury returned verdicts finding the defendant not guilty of theft and official misconduct, as charged in counts I and II, and guilty of official misconduct, as charged in count III.

The defendant argued in his post-trial motion and on appeal that the conviction for official misconduct could not stand because it was legally inconsistent with the verdict acquitting him of theft. The defendant argued that the theft alleged in count I was the predicate offense for the official misconduct charged in count

III. The defendant argued that, if he was not guilty of theft, then he likewise could not be guilty of official misconduct. The trial court determined that the verdicts were consistent, because the theft alleged in count I required proof of value in excess of $300, while the official misconduct charged in count III did not.

The appellate court disagreed with the trial court and reversed the conviction. The appellate court determined, after examining the record, that the jury had to believe that the defendant was guilty of theft over $300 to convict him of official misconduct, as charged in count III. However, the jury acquitted the defendant of such theft when it returned a not guilty verdict on count I. The appellate court concluded that the verdict acquitting the defendant of the predicate offense (theft) was legally inconsistent with the verdict convicting him of the compound offense (official misconduct). Accordingly, relying upon this court's decision in *People v. Frias*, 99 Ill. 2d 193 (1983), the appellate court vacated the official misconduct conviction. No. 2—93—1471 (unpublished order under Supreme Court Rule 23).

I

We first consider whether the jury's verdict finding the defendant guilty of official misconduct was legally inconsistent with the verdict finding him not guilty of theft. Our courts have held that logically inconsistent verdicts may stand, while legally inconsistent verdicts cannot. *People v. Hairston*, 46 Ill. 2d 348 (1970). As a general rule, verdicts that acquit and convict a defendant of crimes composed of different elements, but arising out of the same set of facts, are not legally inconsistent. *Hairston*, 46 Ill. 2d 348. Special scrutiny is required, however, where proof that the defendant committed one offense (*i.e.*, predicate offense) is an essential element of another offense (*i.e.*, compound offense). In cases where the State must prove the commission of the

predicate offense to convict a defendant of the compound offense, reviewing courts carefully examine resulting verdicts for inconsistency.

This court has held that verdicts acquitting a defendant of the predicate offense and convicting him of the compound offense are legally inconsistent, and the conviction for the compound offense must be reversed. *Frias*, 99 Ill. 2d 193; *Hairston*, 46 Ill. 2d 348; see also *People v. Fiore*, 169 Ill. App. 3d 601 (1988). On the other hand, verdicts convicting a defendant of the predicate offense and acquitting him of the compound offense, if inconsistent, are only logically inconsistent and may stand. *People v. Barnard*, 104 Ill. 2d 218 (1984); see also *People v. Rollins*, 140 Ill. App. 3d 235 (1985); *People v. Murray*, 34 Ill. App. 3d 521 (1975).

## A

Applying these principles to the facts presented here, we consider whether the verdicts acquitting the defendant of theft, as charged in count I, and convicting him of official misconduct, as charged in count III, are legally or only logically inconsistent. Under our statutes, a public official commits official misconduct when, "in his official capacity, he *** knowingly performs an act which he knows he is forbidden by law to perform." 720 ILCS 5/33—3(b) (West 1992). In this case, the "act forbidden by law" was theft. Thus, to convict the defendant of the compound offense of official misconduct, the jury had to believe that he was guilty of the predicate offense of theft. Following trial, however, the jury returned verdicts acquitting the defendant of the predicate offense, but convicting him of the compound offense.

The trial court attempted to reconcile the verdicts by finding that the theft charged in count I was not the predicate offense for the official misconduct charged in count III. The trial court reasoned that count I required

the jury to find that the defendant committed a theft of property valued in excess of $300, while the official misconduct charged in count III could have been based upon theft of less than $300.

As the appellate court correctly concluded, however, the trial court's attempted reconciliation of the verdicts, while possible in theory, is belied by the record. A careful review of the record reveals that the jury could have convicted the defendant of official misconduct as charged in count III only if it believed that he committed theft of property over $300.

The indictment charging the defendant with official misconduct alleged that the defendant committed theft "in that he submitted a fictitious invoice for moving expenses and received reimbursement *in the amount of $1,015* which the defendant knew he was not entitled to." (Emphasis added.) The trial record reveals that count III was based upon two written requests for reimbursement that the defendant submitted to the board. One request sought reimbursement of $425 and the other sought reimbursement of $590. No evidence or arguments were offered at trial to suggest that if a theft occurred, it involved an amount less than $300. Even the instructions and the verdict forms indicated that the jury had to believe that the defendant committed theft in excess of $300 to convict him of official misconduct, as charged in count III. The issues instruction for the official misconduct charge stated: "To sustain the charge of Official Misconduct as to count III, *regarding the amount of $1,015.00* ***." (Emphasis added.) Similarly, the verdict for count III specifically noted: "Official Misconduct, count III—$1015.00." In effect, the trial record demonstrates that the jury had to find the defendant guilty of theft in excess of $300 to convict him of official misconduct, as charged in count III.

Under count I of the indictment, however, the jury

acquitted the defendant of precisely such a theft. The verdicts convicting the defendant of the compound offense (official misconduct) and acquitting him of the predicate offense (theft) are legally inconsistent. *Frias*, 99 Ill. 2d at 203-04.

## B

This court has held that, where a jury returns legally inconsistent verdicts acquitting a defendant of one offense and convicting him of another, the conviction must be reversed. *Frias*, 99 Ill. 2d 193. The State acknowledges this rule, but argues that the defendant's official misconduct conviction should nevertheless be affirmed. The State urges this court to follow the United States Supreme Court's decision in *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984).

In *Powell*, the Supreme Court considered the effect of legally inconsistent criminal verdicts. In that case, a jury returned verdicts finding the defendant guilty of a compound offense, but not guilty of the predicate offense. The defendant argued that the guilty verdict must be vacated. The Supreme Court, relying upon its earlier decision in *Harris v. Rivera*, 454 U.S. 339, 70 L. Ed. 2d 530, 102 S. Ct. 460 (1981), found that nothing in the United States Constitution *compelled* the Court to set aside the guilty verdict. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. The Court also declined to vacate the guilty verdict in the exercise of its supervisory authority over the federal courts. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477.

As the State acknowledges, this court is not required to follow *Powell*, since the case was decided under the Supreme Court's supervisory powers and was not of constitutional magnitude. *People v. Gillespie*, 136 Ill. 2d 496 (1990). The State also acknowledges that the *Powell* decision is contrary to this court's decision in *Frias*. The State argues, however, that the rationale underlying

*Powell* is better than that employed in *Frias* and should be followed by this court.

We are not persuaded by the reasoning employed in *Powell* and decline to follow it. The *Powell* Court offered several rationales for its decision. First, while acknowledging that inconsistent verdicts demonstrate that either the conviction or the acquittal was erroneous, the Court assumed that the error would generally lie in the acquittal alone, rather than in the conviction. Quoting *Dunn v. United States*, 284 U.S. 390, 393, 76 L. Ed. 356, 359, 52 S. Ct. 189, 190 (1932), the Court stated that such acquittals "often" result from the jury's " 'assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " *Powell*, 469 U.S. at 63, 83 L. Ed. 2d at 467, 105 S. Ct. at 475.

In our view, however, inconsistent verdicts may *rationally* be explained as a product of jury lenity only in cases where a jury convicts a defendant of a predicate offense and acquits him of a compound offense. See, *e.g., People v. Barnard,* 104 Ill. 2d 218 (1984); *People v. Dawson,* 60 Ill. 2d 278 (1975); *People v. Murray,* 34 Ill. App. 3d 521 (1975). Any attempt to reconcile verdicts such as those here, where the jury acquits the defendant of the predicate offense and convicts him of the compound offense, on the basis of jury lenity defies logic and common sense. Moreover, we cannot simply presume that the jury recognized the defendant's guilt and chose to be merciful, where it is equally possible that the jury, through mistake or error, convicted an innocent defendant.

The *Powell* Court acknowledged that, in some cases, the conviction, rather than the acquittal, may be erroneous. The Court held that a defendant nevertheless should not be permitted to challenge the conviction on the ground of inconsistency between the verdicts. In support of this proposition, the Court noted that the

double jeopardy clause precludes the government from appealing or upsetting an acquittal. Given the government's inability to challenge the acquittal on grounds of inconsistency, the Court deemed it unfair to allow the defendant to challenge the conviction on such grounds. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. Thus, the Court held that a defendant may not challenge his possibly erroneous conviction because the double jeopardy clause prohibits the government from challenging the defendant's possibly erroneous acquittal.

We are not persuaded that the framers of the double jeopardy clause intended to achieve the symmetry between defendants and the prosecution that the *Powell* decision creates. Nor are we persuaded to disregard the risk of unfair conviction and permit legally inconsistent verdicts as a means of achieving "folk justice." Note, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U. Chi. L. Rev. 153, 214 (1989). The *Powell* decision requires the defendant to bear the consequences of an error properly attributed to the trial court. Where a jury returns legally inconsistent verdicts, it is the trial court's duty to refuse the verdicts and to require the jury to deliberate further. *People v. Almo*, 108 Ill. 2d 54 (1985). In this case, however, the trial court entered the inconsistent verdicts, presumably because it failed to recognize the inconsistency. We do not believe that the defendant should suffer the consequences of the trial court's error, particularly where an unlawful conviction may have resulted from that error.

## C

The State also suggests that *Powell* has diminished the viability of this court's decision in *Frias*. In *Frias*, this court held that when a jury reaches legally inconsistent verdicts of guilty and not guilty in a single

proceeding, collateral estoppel principles require reversal of the conviction. In reaching this decision, the *Frias* court relied primarily upon principles of collateral estoppel set forth in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970). *Ashe* determined that the doctrine of collateral estoppel, under which an issue of ultimate fact that has once been determined by a valid and final judgment cannot be relitigated between the same parties in any lawsuit, is embodied in the fifth amendment guarantee against double jeopardy. *Ashe*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189.

The State first argues that nothing in *Ashe* requires or supports the *Frias* court's application of collateral estoppel to bar inconsistent verdicts rendered in a *single proceeding*. Rather, *Ashe* held that when an issue of ultimate fact has once been determined by a valid and final judgment (*e.g.*, an acquittal), collateral estoppel bars *relitigation* of the same issue in a *subsequent* proceeding. Thus, the State argues, *Ashe* requires the application of collateral estoppel to bar inconsistent verdicts rendered in *successive* trials, but does not support application of collateral estoppel to bar inconsistent verdicts rendered in the *same* trial. The State notes that any ambiguity in *Ashe* was resolved in *Powell*, when the Supreme Court expressly rejected the application of collateral estoppel principles to legally inconsistent verdicts rendered in a single proceeding. *Powell*, 469 U.S. at 68, 83 L. Ed. 2d at 471, 105 S. Ct. at 478. The State also suggests that *Powell* repudiated the constitutional underpinnings of *Frias* when it found that nothing in the Constitution *requires* a court to set aside a conviction simply because a jury returns legally inconsistent verdicts in the same proceeding. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. The State argues that *Frias* is therefore no longer valid and should not be followed.

We agree that the *Frias* court's reliance upon principles of collateral estoppel embodied in the fifth amendment can no longer be viewed as valid. The decisions of the Supreme Court establish that the primary purpose of the doctrine of collateral estoppel is to protect an accused from the unfairness of being required to *relitigate* an issue which has once been determined in his favor by a verdict of acquittal in a *second proceeding. Ashe*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189; *Harris v. Washington*, 404 U.S. 55, 30 L. Ed. 2d 212, 92 S. Ct. 183 (1971); *Turner v. Arkansas*, 407 U.S. 366, 32 L. Ed. 2d 798, 92 S. Ct. 2096 (1972). Because the inconsistent verdicts at issue here were returned in the same trial, collateral estoppel does not apply. The defendant argues that, even if the *Frias* decision was wrong as a matter of federal constitutional law, it should nevertheless be upheld as a proper interpretation of the Illinois Constitution.

Our long-standing rule prohibiting legally inconsistent verdicts rendered in a single proceeding, however, need not rest upon collateral estoppel principles derived from provisions of the United States or Illinois Constitution. Rather, the rule is based on common sense and sound logic. Legally inconsistent verdicts cannot stand because they are unreliable. At a minimum, such verdicts suggest confusion or misunderstanding on the part of the jury. Legally inconsistent verdicts are particularly unreliable in cases such as this, where the jury acquits a defendant of a predicate offense and convicts of the compound offense. In such a case, the former verdict necessarily suggests that the evidence failed to establish an essential element of the compound offense. At the very least, the inconsistency constitutes evidence of arbitrariness that undermines confidence in the quality of the jury's conclusion. We can have no confidence in a judgment convicting the defendant of

one crime when the jury, by its acquittal on another crime, has rejected an essential element needed to support the conviction. In such circumstances, the conviction, as a matter of law, cannot stand. We therefore hold, as did the appellate court, that the defendant's official misconduct conviction must be reversed.

## II

Having reversed the official misconduct conviction, we next consider whether the defendant can be tried again for the official misconduct charged in count III of the indictment. Where legally inconsistent verdicts of guilty are returned, a reversal and new trial on all counts is appropriate, assuming that the evidence was sufficient to support the guilty verdicts. *People v. Porter*, 168 Ill. 2d 201, 215 (1995). Where legally inconsistent verdicts of not guilty and guilty are returned, however, the appropriate procedure is more problematic.

As previously noted, where an issue of ultimate fact has once been determined by a valid and final judgment (here, an acquittal), the doctrine of collateral estoppel, which is embodied in the double jeopardy clause of the fifth amendment, bars relitigation of that same issue in a subsequent proceeding between the same parties. *Ashe*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189. Here, the State is barred from challenging the verdict acquitting the defendant of theft as charged in count I. Ill. Const. 1970, art. I, § 10. Thus, that verdict stands as a valid and final judgment. We must consider whether the verdict acquitting the defendant of theft collaterally estops the State from prosecuting the defendant again for official misconduct.

The Supreme Court has stated that, where a defendant claims that a previous judgment of acquittal bars a subsequent prosecution for a related offense, the collateral estoppel rule requires a court to examine the record of the prior proceeding and determine whether a

rational jury could have grounded its verdict on an issue other than the one which the defendant seeks to foreclose from consideration. *Ashe*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189. The defendant here was acquitted by the jury of theft in excess of $300. To sustain that charge, the State had to prove beyond a reasonable doubt that the defendant knowingly obtained, by deception, control over currency in excess of $300 belonging to the board with the intent to permanently deprive the board of the use or benefit of such currency. The defendant conceded that he obtained more than $300 in moving expenses from the board. The only issue for the jury to decide was whether the defendant knowingly obtained such currency "by deception."

The defendant claimed that he did not obtain the money by deception, because his contract with the board permitted him to obtain up to $10,000 in "advances" for any type of relocation expense he expected to incur. The State contended that the contract contemplated only reimbursement for out-of-pocket costs that the defendant had previously paid to move his belongings from his Lake Forest home to an apartment within the district. The State alleged that the defendant "deceived" the board when he obtained reimbursement for expenses never incurred and obtained reimbursement for expenses incurred in preparing his Lake Forest home for sale. Because the jury, by its verdict acquitting the defendant of theft, resolved the ultimate issue in the case—whether the defendant obtained moving expense reimbursement by deception—adversely to the prosecution, the principle of collateral estoppel prohibits relitigation of that issue in a second prosecution. *Ashe*, 397 U.S. at 443, 25 L. Ed. 2d at 475, 90 S. Ct. at 1194; *Sealfon v. United States*, 332 U.S. 575, 92 L. Ed. 180, 68 S. Ct. 237 (1948).

The official misconduct charged in count III of the indictment rests upon the same theft charged in count I. A second trial on that charge would allow the State to relitigate the identical issue which the jury resolved in the defendant's favor when it acquitted him of theft, namely, whether the moving expense reimbursement the defendant obtained from the board was obtained by deception. We therefore hold that the doctrine of collateral estoppel bars the State from retrying the defendant for official misconduct. *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969) (where defendant was acquitted of larceny but convicted of burglary in first trial and was then subjected to a second trial on both charges after successfully appealing his conviction, retrial and conviction of the defendant on the larceny charge violated the double jeopardy clause of the fifth amendment).

The fact that the jury made inconsistent findings of fact when it acquitted the defendant of theft and convicted him of official misconduct does not alter our conclusion that collateral estoppel bars a second prosecution for the latter offense. The United States Supreme Court has held that collateral estoppel applies even where there is reason to question the validity of a jury's findings of fact. See *Simpson v. Florida*, 403 U.S. 384, 29 L. Ed. 2d 54, 91 S. Ct. 1801 (1971) (collateral estoppel applies where the validity of a jury's findings of fact in favor of the accused was questionable because a different jury in an earlier trial had resolved the same questions of fact against the accused); see also *Harris v. Washington*, 404 U.S. 55, 30 L. Ed. 2d 212, 92 S. Ct. 183 (1971) (collateral estoppel applies where the validity of the jury's findings was questionable because it was not permitted to consider all relevant evidence). Moreover, the Supreme Court has held that an acquitted defendant may not be retried even where it appears that the

acquittal was based upon an egregiously erroneous foundation. *Arizona v. Washington,* 434 U.S. 497, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978). We likewise conclude that the findings of fact underlying a judgment of acquittal must be given effect even where they appear questionable or erroneous. The State cannot prosecute the defendant again for official misconduct, because an issue of ultimate fact essential to a conviction for that offense has already been determined in the defendant's favor by the verdict acquitting him of theft.

For the reasons stated, we affirm the appellate court judgment reversing the defendant's conviction for official misconduct.

*Appellate court judgment affirmed.*

JUSTICE MILLER, dissenting:

Adhering to an unnecessary and outmoded state rule, the majority concludes that the remedy for legally inconsistent verdicts of acquittal and conviction is to reverse the conviction. I believe that the better approach is to allow the conviction to stand, as it would under federal practice, and accordingly I dissent.

The defendant in this case was charged with one count of theft and two counts of official misconduct; the misconduct counts were based on the actions alleged in the theft count. The jury returned verdicts finding the defendant not guilty of theft, count I, and not guilty of one charge of official misconduct, count II, but guilty of another charge of official misconduct, count III. The defendant argues that the verdicts are legally inconsistent and that the only remedy for the problem, under *People v. Frias,* 99 Ill. 2d 193 (1983), is to reverse the conviction for official misconduct. The majority holds for the defendant, relying on *Frias.* The majority rejects the State's argument that this court should no longer adhere to *Frias* and should instead follow the contrary rule of the

United States Supreme Court, which would allow the defendant's conviction to stand.

I disagree with the majority and would adopt the approach proposed by the State. What colors much of the majority's analysis in this case is its faulty assumption that the defendant's acquittal on count I is the jury's "correct" verdict and that the conviction on count III is the "incorrect" one. In these circumstances, there is no way of knowing which is the "correct" verdict and which is the "incorrect" one. " 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " *Dunn v. United States*, 284 U.S. 390, 393, 76 L. Ed. 356, 359, 52 S. Ct. 189, 190 (1932), quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925).

In *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984), a unanimous Supreme Court determined that nothing in the United States Constitution requires the reversal of a conviction merely because it is legally inconsistent with an acquittal rendered on another charge in the same proceeding. Announcing a rule for federal cases, the Supreme Court held under its supervisory authority that a legally inconsistent conviction may stand in those circumstances. In reaching the opposite conclusion, the *Frias* court had earlier relied on principles of collateral estoppel. As *Powell* makes clear, however, collateral estoppel is not applicable to this situation. Although collateral estoppel would preclude the State from bringing a second prosecution for conduct for which the defendant was found not guilty in an earlier prosecution, collateral estoppel is not implicated when the charges are brought in a single proceeding and the inconsistency arises from those verdicts. Collateral estoppel applies to sequential

prosecutions, not simultaneous ones. While we are not required to follow *Powell*, I would do so, for it represents the better rule.

The majority correctly recognizes that the constitutional underpinnings of the *Frias* decision are no longer sound. 172 Ill. 2d at 280-81. Nonetheless, the majority refuses to follow *Powell* and offers several grounds in support of its continued adherence to the rule in *Frias*. None of the reasons cited by the majority are persuasive.

First, the majority takes issue with the *Powell* Court's observation that legally inconsistent verdicts may be explained as the product of jury lenity. The majority insists that lenity provides a rational explanation only when the defendant is convicted of the predicate offense and acquitted of the compound offense. The majority believes that lenity cannot be used to explain cases such as this one, in which the jury acquits the defendant of the predicate offense and convicts him of the compound offense. 172 Ill. 2d at 278 ("Any attempt to reconcile verdicts such as those here, where the jury acquits the defendant of the predicate offense and convicts him of the compound offense, on the basis of jury lenity defies logic and common sense").

The majority is mistaken, however, in searching for a rational explanation for a jury's exercise of lenity. What the majority forgets is that lenity, by its very nature, does not necessarily operate in a rational manner, and a rational explanation cannot always be expected for its exercise.

The majority also disputes the *Powell* Court's recognition that the burden of the jury's exercise of lenity falls on the prosecution, because double jeopardy principles preclude the prosecution from challenging an acquittal. I am not sure how much of the *Powell* Court's analysis stems from a desire to achieve "symmetry," as the majority charges (172 Ill. 2d at 279), and how much

is based on the commonsense observation, ignored by the majority, that there is no reason to assume that the acquittal represents the correct verdict. As *Powell* explains:

> "Inconsistent verdicts *** present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 468-69, 105 S. Ct. at 477.

In addition, the majority forgets that the defendant always remains free to challenge the sufficiency of the evidence supporting the conviction. The conviction is not insulated from review; *Powell* merely says that the conviction should not be reversed automatically.

Finally, the majority mentions that when legally inconsistent verdicts are returned by a jury, the trial judge should point out the problem to the jury and ask the jurors to resume their deliberations. The majority believes that the failure on appeal to reverse a legally inconsistent conviction would cause the defendant to bear the burden of the trial court's inaction. 172 Ill. 2d at 279. Once again the majority begs the question by assuming that the acquittal is the jury's "true" verdict and that the conviction is the improper verdict. Perhaps in these circumstances the judgment of acquittal is an unwarranted boon delivered to the defendant by a jury convinced of the defendant's guilt. As *Powell* noted, "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 468, 105 S. Ct. at 476.

For the reasons I have stated, I would reverse the

judgment of the appellate court and remand the cause to that court so that it may consider the other issues raised on appeal by the defendant.

JUSTICE FREEMAN joins in this dissent.