# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2017 IL App (3d) 140514

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIEUSEUL BROWN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0514 |
| Filed | May 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 13-CF-299; the Hon. David A. Brown, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Justice McDade dissented, with opinion. |

**OPINION**

¶ 1        The defendant, Dieuseul Brown, appealed his conviction of second degree murder.

¶ 2                                                        FACTS

¶ 3        The defendant was charged with two alternative counts of first degree murder for the shooting death of Kelsey Coleman. Count I alleged a charge of felony murder, in that Coleman was shot during an armed robbery, in violation of section 9-1(a)(3) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(3) (West 2012)). Count II alleged that the defendant shot Coleman, knowing that the act created a strong probability of death or great bodily harm, and in fact caused the death of Coleman, in violation of section 9-1(a)(2) of the Criminal Code (720 ILCS 5/9-1(a)(2) (West 2012)). The case went to a jury trial. The evidence at trial indicated that, on April 4, 2013, Coleman had returned home with his three children and their mother at around 9 p.m. A handyman, John McNulty, was there performing some renovations. McNulty testified that, around midnight, the back door crashed opened and the defendant came in with a gun. The defendant held a gun to McNulty's head and walked McNulty through the house. The defendant ran into Coleman in the hallway, and Coleman and the defendant started wrestling. The fight continued into the kitchen, and McNulty heard gunshots. Coleman was walking stiffly from the kitchen and told McNulty that he had been shot. McNulty helped Coleman sit down in the hallway.

¶ 4        The mother of Coleman's children, Melodie Richardson, testified that she heard a loud bang and soon afterward the defendant came into her room with a gun pointed at McNulty's head. The defendant demanded money, and Richardson called out for Coleman. McNulty and the defendant went back down the hallway, and Richardson hid with her daughter in the bedroom closet. While in the closet, she heard two gunshots and heard McNulty yell out to call the police. She came out of her room and saw Coleman staggering down the hallway. She saw that he had been shot. She ran out of the house because her cell phone battery was dead. McNulty had already left. When the paramedics arrived, Coleman was already dead. Richardson identified the defendant from a photo array, and McNulty identified the defendant in a lineup.

¶ 5        The defendant testified at trial that he went to Coleman's house around midnight on April 4, 2013. The defendant sold heroin and could not reach his usual supplier. He knocked on the back door of Coleman's house, and Coleman let him in. Coleman gave the defendant the drugs he asked for, but Coleman thought that the money paid by the defendant was not the right amount. The defendant tried to give the drugs back to Coleman and asked for his money back. Coleman refused and started throwing punches at the defendant. The defendant punched back, and he thought that Coleman was trying to kill him. When the defendant fell to the ground, his gun fell out of his waistband. The defendant testified that he picked it up and fired a warning shot, but that did not stop Coleman. The defendant testified that he felt that he had no choice but to shoot Coleman, so he fired the gun into Coleman's back, while Coleman was on top of the defendant on the ground. The defendant then ran from the house, leaving the drugs and money behind.

¶ 6        At the jury instruction conference, the trial court approved instructions pertaining to self-defense and second degree murder. The first degree murder instructions were modified by agreement to differentiate between count II, which was referred to as first degree murder (Type

- 2 -

A), and count I, the felony murder count, which was referred to as first degree murder (Type B). The parties agreed that Illinois Pattern Jury Instruction, Criminal, No. 2.01B (4th ed. 2000) (hereinafter, IPI Criminal 4th) was to be given, modified to refer to first degree murder (Type A), which provided:

> "Under the law, a person charged with first degree murder may be found (1) not guilty of first degree murder; or (2) guilty of first degree murder; or (3) guilty of second degree murder." IPI Criminal 4th No. 2.01B.

¶ 7 The jury was also given IPI Criminal 4th No. 2.03A, which instructed that if the State proved beyond a reasonable doubt that the defendant was guilty of first degree murder (Type A), then the defendant had the burden of proving by a preponderance of evidence that a mitigating factor was present so that he was guilty of the lesser offense of second degree murder and not guilty of first degree murder (Type A). IPI Criminal 4th No. 2.03A. The jury was also instructed that it could not consider whether the defendant was guilty of the lesser offense of second degree murder unless it first determined that the defendant was proved guilty beyond a reasonable doubt of first degree murder. With respect to the charge of first degree murder (Type A), the jury was given three verdict forms: (1) not guilty of first degree murder (Type A); (2) guilty of first degree murder (Type A); and (3) guilty of second degree murder. The judge instructed the jury to select one verdict and sign it and not to write on the other two forms. The jury was also given four other verdict forms: (1) not guilty of first degree murder (Type B); (2) guilty of first degree murder (Type B); (3) the allegation that the defendant personally discharge the firearm was proven; and (4) the allegation that the defendant personally discharged the firearm was not proven.

¶ 8 After deliberations, the jury returned its verdicts. It did not follow the directions regarding signing only one of the verdict forms relative to first degree murder (Type A) and only signing the discharge of firearm verdicts if it found the defendant guilty of first degree murder. The jury signed two verdict forms: not guilty of first degree murder (Type A) and guilty of second degree murder. The jury also signed the verdict forms stating that defendant was not guilty of first degree murder (Type B) and that the allegation that the defendant had personally discharged the weapon was proven. The jury was not polled, the verdicts were received and entered, and the jury was discharged.

¶ 9 The defendant filed a motion for a new trial, arguing, among other things, that he was not proved guilty beyond a reasonable doubt. The trial court denied the motion and proceeded to sentencing. The defendant was sentenced to a 24-year term of imprisonment. The defendant's motion to reconsider his sentence was denied and defendant appealed.

¶ 10 ANALYSIS

¶ 11 The defendant argues that his conviction of second degree murder must be vacated because a finding of not guilty verdict of first degree murder precluded a finding that he was guilty of second degree murder. The State argues that the jury mistakenly filled out extra verdict forms. Also, the State argues that the defendant forfeited this issue on appeal because he failed to make a timely objection or include the issue in his posttrial motion and did not argue plain error. The issue of whether a defendant forfeited an argument on appeal is a question of law that we review *de novo*. *People v. Herron*, 215 Ill. 2d 167, 174 (2005).

¶ 12 A defendant who fails to make a timely objection and include the issue in a posttrial motion forfeits review of the issue. *Id.* at 175. There is no dispute that the defendant did neither of

these. The defendant argues, though, that he is really raising a reasonable doubt argument, which can be made for the first time on appeal. *People v. King*, 151 Ill. App. 3d 644, 646 (1987); *People v. Walker*, 7 Ill. 2d 158, 160 (1955) ("The failure to prove a material allegation of an indictment beyond a reasonable doubt is fatal to a judgment of conviction, and the question may be raised for the first time upon review."). The defendant contends that the jury's verdict of not guilty of first degree murder means that the State failed to prove a material element of the charge of second degree murder. In *Walker*, the material allegation that was not proved at trial was the identity of the people whose belongings were burglarized; the appellate court reversed the conviction because the identity of the victim was an essential element of the crime grounded in double jeopardy principles. *Walker*, 7 Ill. 2d at 162. In *King*, the defendant argued that his identity was not proven. *King*, 151 Ill. App. 3d at 648.

¶ 13 The defendant in the instant case is not raising the same argument that the courts in *Walker* and *King* found to be outside of the waiver rule. The defendant did not argue that his identity was not proven, nor did he argue that he did not shoot the victim. The defendant's argument, although he denies it, is basically that the verdicts were inconsistent. Since the defendant argued for plain error review in his reply brief, we will consider the issue for plain error under the second prong of the plain error analysis, *i.e.*, where the error is so serious that the defendant was denied a substantial right and thus a fair trial. See *People v. Williams*, 193 Ill. 2d 306, 348 (2000); *Herron*, 215 Ill. 2d at 179.

¶ 14 The defendant primarily relies upon *People v. Parker*, 223 Ill. 2d 494 (2006), wherein the Illinois Supreme Court stated that "a finding that the defendant is not guilty of first degree murder bars the jury from considering second degree murder, and the jury verdict form of 'not guilty of first degree murder' would unambiguously establish the jury's intention to acquit on all charges." *Id.* at 505. In that case, however, the court was addressing jury verdict forms, not inconsistent verdicts. The jury in *Parker* had been provided with three verdict forms: not guilty of first degree murder, guilty of first degree murder, and guilty of second degree murder. There was no error in the trial court's failure to provide a fourth verdict form, a general "not guilty" verdict form, because the jury was properly instructed and followed the instructions, whereby a finding of not guilty of first degree murder precluded a finding of guilty of second degree murder. *Id.*

¶ 15 While the jury in the instant case was similarly correctly instructed, it is clear that the jury did not follow the instructions because it filled out more than one verdict form and signed the form on the allegation that the defendant personally discharged the firearm. It is without question that second degree murder is a lesser mitigated offense of first degree murder. *Id.* at 504-05 (citing *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995)). Thus, the jury found essential elements, the elements of first degree murder, to exist and to not exist, resulting in inconsistent verdicts. *People v. Lefler*, 2016 IL App (3d) 140293, ¶ 20 (jury verdicts are legally inconsistent when an essential element of each offense is found to exist and to not exist, even though the offenses arise out of the same set of facts); *People v. Porter*, 168 Ill. 2d 201, 214 (1995) (verdicts that defendant was guilty but mentally ill of both second degree and first degree murder for the death of his mother were inconsistent because they found the murder both provoked and unprovoked at the same time).

¶ 16 This is not a case of inconsistent guilty verdicts, but rather a guilty verdict that is inconsistent with an acquittal on another count. The United States Supreme Court, in *United States v. Powell*, 469 U.S. 57 (1984), extended earlier precedent, *Dunn v. United States*, 284

U.S. 390 (1932), which held that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count, to cases where the acquittal was on a predicate offense and the conviction was on the compound offense. *Powell*, 469 U.S. at 65. The *Powell* Court found that inconsistent verdicts were in error, but not of a constitutional nature. *Id.* at 66. The rationale for not allowing the defendant to challenge such an inconsistent jury verdict was that the government could not challenge the acquittal and it was unclear who the jury's error favored. *Id.* Also, the error could have been the result of juror lenity. *Id.* Finally, the defendant was protected against jury irrationality or error because of sufficiency of the evidence review. *Id.* at 67.

¶ 17    Illinois initially did not follow *Powell*, finding that it was decided under the Supreme Court's supervisory powers and was not of constitutional magnitude. *People v. Klingenberg*, 172 Ill. 2d 270, 277 (1996). In *Klingenberg*, the defendant argued that the jury verdict convicting him of official misconduct was legally inconsistent with the verdict acquitting him of theft. *Id.* at 272. The *Klingenberg* panel took issue with the idea of juror lenity when the jury acquits of the predicate offense and convicts of the compound offense. *Id.* at 278. However, the Illinois Supreme Court later overruled *Klingenberg* and applied *Powell* in *People v. Jones*, 207 Ill. 2d 122 (2003). In *Jones*, the defendant was acquitted of aggravated battery but convicted of mob action. The court pointed out that there were not two guilty verdicts but rather one guilty and one acquittal. *Id.* at 135-36.

¶ 18    The difference between the instant case and the *Powell* and *Jones* line of cases is that those defendants were convicted of the lesser-included offense and acquitted of the greater offense, while the defendant in this case was convicted of the lesser-mitigated offense and acquitted of the greater offense. However, the rationale of *Powell* still applies. While it is clear that the jury was in error in returning inconsistent verdicts, in the words of the United States Supreme Court in *Powell*, "it is unclear whose ox has been gored," and it is unclear who the jury's error favored. See *Powell*, 469 U.S. at 65. The government could not challenge the acquittal. Also, the verdict could still be explained as the result of juror lenity: second degree murder is a "lesser" offense than first degree murder because its penalties are lesser. See *People v. Newbern*, 219 Ill. App. 3d 333, 353 (1991). Finally, the defendant was protected against jury irrationality or error because he could have sought a review of the sufficiency of the evidence. The dissent contends that the acquittal of first degree murder demonstrates the insufficiency of the State's evidence for second degree murder, but *Powell* requires a review of the sufficiency of the evidence "independent of the jury's determination that evidence on another count was insufficient." *Powell*, 469 U.S. at 67. This sufficiency of the evidence review, which will protect a defendant against jury irrationality, requires us to independently assess the evidence adduced at trial and determine if it would support any rational determination of guilt of second degree murder beyond a reasonable doubt. See *id.* Thus, although the defendant fails to point to any specific evidentiary insufficiencies, we will assess the evidence admitted at trial.

¶ 19    To sustain the defendant's second degree murder conviction, the State was required to prove that the defendant performed the acts that actually caused Coleman's death and that the defendant knew that such acts created a strong probability of death or great bodily harm to Coleman. Those elements are not in dispute; the defendant testified at trial that he went to Coleman's home and shot Coleman in the back. The State also had to prove, though, that the defendant was not justified in using deadly force and that the defendant's belief that the circumstances justified deadly force as unreasonable. The defendant testified that he was

invited into Coleman's home and that he shot Coleman during an altercation in which Coleman was the aggressor in an argument over drugs and money. The defendant testified that Coleman was on top of the defendant on the ground, choking the defendant, and defendant believed he had to shoot Coleman. McNulty and Richardson testified, though, that the defendant was an aggressive intruder who held a gun to McNulty's head, demanded money, and was looking for Coleman. Although neither saw the shooting, they both saw the defendant on his feet after the shooting, rather than lying on the ground. We find that the evidence was sufficient so that a jury could rationally determine that the defendant was the aggressor, that he was not justified in using deadly force, and that any belief that deadly force was necessary was unreasonable.

¶ 20    While we find that the jury erred by returning inconsistent verdicts, the entry of a conviction inconsistent with an acquittal is not of a constitutional nature and it did not deny the defendant a substantial right. The defendant has, therefore, failed to meet his burden of showing that the error affected the fairness of his trial or challenged the integrity of the judicial process. Accordingly, the second prong of plain-error review does not provide a basis for excusing the defendant's procedural default, and we affirm the defendant's conviction of second degree murder.

¶ 21                              CONCLUSION

¶ 22    The judgment of the circuit court of Peoria County is affirmed.

¶ 23    Affirmed.

¶ 24    JUSTICE McDADE, dissenting.

¶ 25    The majority has affirmed the conviction of defendant, Dieuseul Brown, of second degree murder, finding, in essence, that Brown forfeited his protection against jury irrationality or error by failing to challenge the sufficiency of the State's evidence. Because he has clearly raised precisely that challenge, I respectfully dissent from this finding.

¶ 26    Despite having been instructed multiple times by the court that they were to complete only one verdict form, the jurors, at the end of their deliberations, presented two signed verdicts to the court. One verdict acquitted Brown of first degree murder and the second found him guilty of second degree murder.

¶ 27    Despite having instructed the jury multiple times that they were to complete only one verdict form, the court, upon learning that the jurors had executed two forms, accepted and entered judgment on both verdicts.

¶ 28    Brown's acquittal of first degree murder cannot be before this court in this appeal. Brown has neither a reason nor a right to raise it because he was found not guilty. Ill. Const. 1970, art. VI, § 6 (stating that "after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal"); *People v. Pearson*, 16 Ill. App. 3d 543, 549 (1973). The State is legally prohibited from raising it because Brown was acquitted by the jury. *People v. Kapande*, 23 Ill. 2d 230, 236 (1961) (holding that "[t]he State's appeal from the judgment of 'not guilty' in the criminal case is dismissed and no citation of authority is necessary for the proposition that the State cannot appeal from a 'not guilty' judgment").

¶ 29    Thus, the only issue properly before this court is Brown's challenge to his conviction of second degree murder. The sole argument Brown has advanced is that the State has failed to

prove an essential element of the crime—that he is guilty of first degree murder. Throughout his initial and reply briefs, he has persisted in that very argument. Nowhere in his briefs has he raised a claim of inconsistent verdicts. Nor does his argument implicate the principles or precedent relating to lesser included offenses. See *supra* ¶¶ 17-18.

¶ 30 Because Brown has not raised these issues and because that case does not deal with a murder statute such as the one applicable in the instant case, the decision of the United States Supreme Court in *United States v. Powell*, 469 U.S. 57 (1984), on which the majority relies, is inapposite. *Powell* was a claim of inconsistent verdicts in a drug prosecution pursued *via* multiple claims in multiple counts. Citing its earlier decision in *Dunn v. United States*, 284 U.S. 390 (1932), the *Powell* Court reiterated that " '[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.' " *Powell*, 469 U.S. at 62 (quoting *Dunn*, 284 U.S. at 62). It, thus, rejected Betty Lou Powell's argument that, because of the overlapping nature of the required evidence, the jury's verdict acquitting her on some of the counts was *inconsistent* with its guilty verdict on the other counts. That is not and never has been the claim raised by Brown in this case; his only claim is that the evidence was insufficient to convict him of second degree murder because the State failed to prove an essential element of the crime. This is a quintessential insufficiency-of-the-evidence claim.

¶ 31 The majority also cites *Powell* as requiring a review of the sufficiency of the evidence "independent of the jury's determination that evidence on another count was insufficient" (*Powell*, 469 U.S. at 67) and notes that Brown has failed to point to any specific evidentiary insufficiencies. It is unclear exactly what specific insufficiencies he could raise.

¶ 32 It is neither reasonable nor necessary for Brown to either raise or argue the insufficiency of any evidence presented by the State that resulted in his *acquittal* of first degree murder. It was at all times the *State's* burden to prove Brown guilty beyond a reasonable doubt of first degree murder. Brown had no burden of proof regarding that charge in the trial court and he equally has no such burden in this court. See, *e.g.*, *People v. McGee*, 2015 IL App (1st) 130367, ¶ 69 (holding that "[i]t is axiomatic that an accused is presumed innocent and that the burden of proof as to his guilt lies, at all times, with the State"). The jury found Brown not guilty of first degree murder, and we have no basis for concluding it did not intend to do so. He had raised the affirmative defense of self-defense, and the jurors may well have believed him. The trial court entered that verdict as an individual and distinct judgment. There is, quite simply, nothing for either party to raise or to prove. Any review of the sufficiency of the evidence to either attack or to justify the first degree murder acquittal is both improper and unconstitutional.

¶ 33 Moreover, such a procedure would invite the State to come through the back door to finesse an argument, as it appears to do here, that the jury really *intended* to find Brown guilty of first degree murder because it intended to find him guilty of second degree murder. If the State is constitutionally prohibited from a frontal attack on the jury's finding of not guilty, it surely is similarly barred from assaulting it by indirection or subterfuge.

¶ 34 It is clear that the jury misunderstood the instructions about how to fill out the verdict forms and that a mistake was made. It is not at all clear, however, what that mistake was. Despite the arguments of the State, there is no actual factual basis for determining that the jurors did not, in fact, intend to acquit Brown of first degree murder. Without such a finding, his conviction of second degree murder cannot legally stand. To determine that the jurors did *not* so intend is to engage not only in an unconstitutional review of his acquittal but also in

wanton speculation. To find Brown guilty of second degree murder in the face of his acquittal of first degree murder flies in the face of the plain and unambiguous language of the statute and frustrates the manifest intent of the legislature.

¶ 35     In summary, the jury acquitted Brown of the first degree murder of Coleman; that acquittal cannot be challenged constitutionally by either the defendant or the State; the statute clearly and unambiguously requires, as the first necessary element of proof for second degree murder, that the State prove Brown guilty of first degree murder; the State did not—indeed, could not—provide such proof because of the acquittal; therefore, the evidence was insufficient as a matter of law to prove him guilty of second degree murder. I can see no choice but to reverse that conviction. If we do not do so, we will have violated our sworn duty to enforce the law as written and enacted by the legislature.

¶ 36     It is possible, but not certain, that Brown was wrongly acquitted of first degree murder. He is nonetheless legally not guilty. It seems trite but is nevertheless true to say that it is better to risk exonerating a possible wrongdoer than to (1) ignore the unambiguous language of a duly enacted statute or (2) intentionally and deliberately undermine the most fundamental constitutional principles and procedures undergirding our criminal justice/criminal judicial system.